UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JANE DOE, a Sex Trafficked Individual,<br><br>Plaintiff,<br><br>vs.<br><br>WYNDHAM HOTELS & RESORTS, INC., BRE/LQ PROPERTIES, LLC, LA QUINTA INN & SUITES, LA QUINTA HOLDINGS INC., LQ MANAGEMENT LLC, RANDY ROES 1-100 (fictitious individuals not yet known), and ABC CORPORATIONS 1-100 (fictitious businesses and corporations not yet known),<br><br>Defendants. | : : : : : : : : : : : : : : : : : : : : : | Case No.: 2:24-CV-11446<br><br>Civil Action<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## I.      PRELIMINARY STATEMENT

This case is brought to shed light on a dark, wicked corner of our society—the enslavement of our most vulnerable members into the commercial sex industry.  Plaintiff, JANE DOE, was trafficked for sex for over two years.  The Defendants are hotels and motels and their respective owners, who were instrumental, if not necessary, participants in a sex trafficking venture that took away over two years of Plaintiff's life and has left her psychologically scarred.  This case is brought to hold the hotels and motels that knowingly benefited from the horrors inflicted on Plaintiff to account.

Tom Roe, a notorious sex trafficker, hooked Plaintiff on drugs, providing her with drugs on a daily basis, while exploiting her for commercial sex at the location of the Defendants' hotels and motels.  Tom Roe persistently intimidated, defrauded, manipulated, and drugged Plaintiff to

keep her pliant. When Plaintiff told Tom Roe that she wanted her exploitation to end and no longer participate in his sex trafficking venture, Tom Roe beat her into submission

Tom Roe's years-long exploitation of Plaintiff would not have been possible without the available network of hotels and motels who willingly participated by providing the place and opportunity for her near-daily exploitation.

Other perpetrators of and participants in these crimes will be held to account in different ways and in different fora. This case is about the hotel and motel owners knowingly profiting from a sex trafficking venture with Tom Roe. Defendants were aware of what was happening, yet they knowingly turned a blind eye to this reality because it was in their financial interests to do so.

## II.    THE PARTIES

1.      Plaintiff, JANE DOE, is a resident of the Commonwealth of Tennessee. Due to the sensitive, private, and demonstrably retaliatory nature of the allegations contained herein, the Plaintiff requests this District Court grant a protective order pursuant to Federal Rules of Civil Procedure Rule 26(c) to permit her to proceed under a pseudonym and to ensure Defendants keep Plaintiff's identity confidential throughout the pendency of the lawsuit and thereafter.[1] Plaintiff

---

[1] Tom Roe trafficked Plaintiff from approximately August 2012 through December 2014. In addition to being a victim of a "severe form[] of trafficking" as it is defined under 22 U.S.C.S. §7102(11), Plaintiff was also "caused to engage in commercial sex act[s]" for years thereafter. *See* 18 U.S.C.S. §1591(a). Federal law considers victims of sex trafficking to be the victims of organized crime entitled to witness protection. *See* 18 U.S.C. § 1594(g) ("Witness Protection - Any violation of this chapter shall be considered an organized criminal activity or other serious offense for the purposes of application of chapter 224"). In cases where the Plaintiff has demonstrated a need for pseudonymity, the district court should use its powers to manage pretrial proceedings under Fed. R. Civ. P. 16(b) and to issue protective orders limiting disclosure of the party's name under Fed. R. Civ. P. 26(c) to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. *Doe v. Megless*, 654 F.3d 404, 409-410 (3d Cir. 2011); *see also Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (recognizing the Ninth Circuit permits parties to use pseudonyms when disclosure of a name "is necessary…to protect a person from harassment, injury, ridicule or personal embarrassment); *see also Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545, 549 (D.N.J. 2006) (the District Court found that the stigma of mental illness was enough to permit the plaintiff to proceed under a pseudonym); *see also Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990 (N.D. Cal. 2015) (finding that a case involving exotic dancers

also intends to file a formal motion to proceed under a pseudonym after completing service of the Complaint on Defendants to determine whether the Defendants would oppose Plaintiff's request to proceed under a pseudonym.

2. Defendant, BRE/LQ PROPERTIES LLC, is or was a hotel venture using the name La Quinta Inn & Suites located at 1010 Breckenridge Drive, Little Rock, Arkansas 72205, during the time listed in this Complaint. Upon information and belief, Defendant, BRE LQ PROPERTIES LLC, is a Texas limited liability company which can be served at its principal place of business located at 909 Hidden Ridge, Suite 600, Irving, Texas 75038.

3. Defendant, LA QUINTA INN & SUITES, is or was a hotel venture located at 1010 Breckenridge Drive, Little Rock, Arkansas 72205. Upon information and belief, at all relevant times, it was owned and operated by Defendant, LA QUINTA INN & SUITES. Defendant, LA QUINTA INN & SUITES, is a Texas corporation, owned by Wyndham Hotels & Resorts Inc., but headquartered at 909 Hidden Ridge, Irving, Texas 75038. Defendant, LA QUINTA INN & SUITES, owns, operates, and franchises La Quinta Inn & Suites hotels, provides vacation destinations, and other services.

4. Defendant, LQ MANAGEMENT LLC, is or was a hotel venture located at 1010 Breckenridge Drive, Little Rock, Arkansas 72205. Upon information and belief, at all relevant times, it was owned and operated by Defendant, LA QUINTA HOLDINGS INC. or Defendant, WYNDHAM HOTELS & RESORTS, INC. Upon information and belief, Defendant, LQ MANAGEMENT LLC, is a Texas Limited Liability Company which can be served at its principal place of business located at 909 Hidden Ridge, Suite 600, Irving, Texas 75038. Defendant, LQ

---

because of the social stigma of such acts met the standards set by the Ninth Circuit to proceed under a pseudonym).

MANAGEMENT LLC, owns, manages, operates, and franchises La Quinta Inn & Suites hotels, provides vacation destinations, and other services.

5. Defendant, LA QUINTA HOLDINGS INC., is or was a hotel venture located at 1010 Breckenridge Drive, Little Rock, Arkansas 72205. Upon information and belief, at all relevant times, it was owned and operated by Defendant, LA QUINTA HOLDINGS INC. Defendant, LA QUINTA HOLDINGS INC., is a Texas corporation, owned by Wyndham Hotels & Resorts Inc., but headquartered at 909 Hidden Ridge, Irving, Texas 75038. Defendant, LA QUINTA HOLDINGS INC., owns, operates, and franchises La Quinta Inn & Suites hotels, provides vacation destinations, and other services.

6. Defendant, WYNDHAM HOTELS & RESORTS INC., owns the Wyndham Hotels brand and the La Quinta Inn & Suites brand. Defendant, WYNDHAM HOTELS & RESORTS INC., maintains its principal place of business at 22 Sylvan Way, Parsippany, New Jersey 07054, and is the owner and franchisor of the La Quinta Inn & Suites brands within the United States with around 900 locations. It both owns certain locations and franchises others. Defendant, WYNDHAM HOTELS & RESORTS INC., offers property management, call center distribution, reservations, marketing, sales procurement, and training expertise to its proprietary locations and to its franchisees and employees.

7. Defendant, RANDY ROES 1-100, are fictitious individuals not yet known, and the Plaintiff, therefore, sues said Defendants by such fictitious names and will ask leave of court to amend this Complaint to show their true names or capacities when the same have been ascertained. Plaintiff is informed and believes, and therefore alleges, that each of the RANDY ROE Defendants are, in some way, responsible for the events and happenings herein set forth and proximately caused injury and damages to Plaintiff as herein alleged.

8.      Defendant, ABC CORPORATIONS 1-100, are fictitious businesses and corporations not yet known, and the Plaintiff, therefore, sues said Defendants by such fictitious names and will ask leave of court to amend this Complaint to show their true names or capacities when the same has been ascertained. Plaintiff is informed and believes, and therefore alleges, that each of the ABC CORPORATIONS Defendants are, in some way, responsible for the events and happenings herein set forth and proximately caused injury and damages to Plaintiff as herein alleged.

### III.    JURISDICTION & VENUE

9.      This Court has subject matter jurisdiction of this matter under 28 U.S.C. §1331, §1332, 18 U.S.C. §1581 *et seq*, 18 U.S.C. §1595(a), 22 U.S.C. §7101 *et seq.*, and 28 U.S.C. §1367.

10.     Venue is proper in this District because at all relevant times, the Defendants are either domiciled in this District or regularly conduct business in this District as permitted by 28 U.S.C. §1391(b), or a substantial number of the acts allegedly occurred in this District.

11.     This Court has personal jurisdiction over all Defendants because they are citizens of New Jersey, regularly conduct business within the State of New Jersey, or because their acts or omissions give rise to the causes of action that occurred within the State of New Jersey, including the control accorded to all Defendants via the contractual relationship between all of the Defendants, or because the Court may exercise pendant personal jurisdiction over out-of-state defendants because the Court has personal jurisdiction over other defendants, and the claims arise out of the same nucleus of facts.

## IV.    FACTUAL ALLEGATIONS

### A.  *TOM ROE FORCED PLAINTIFF TO PROVIDE COMMERCIAL SEX.*

12.    Plaintiff grew up in an abusive foster home. Her foster parents physically abused her on a regular basis, and her foster father sexually abused her, as well. After a decade of abuse, Plaintiff ran away from home when she was fifteen years old.

13.    A couple of years later, a woman who Plaintiff knew as "Heaven," reached out to her on social media about making money by modeling with Tom Roe, and she made the introductions for Plaintiff.

14.    Tom Roe and Heaven invited Plaintiff back to Tom Roe's place to work on Plaintiff's modeling portfolio.

15.    Plaintiff never saw Heaven again after this first initial interaction.

16.    Tom Roe manipulated Plaintiff into participating in a commercial sex ring by leading her to believe he was photographing her for a modelling portfolio when, in fact, without Plaintiff's knowledge, he was posting her picture on various escort websites under false names to illicit commercial sex clients.

17.    Before Plaintiff began providing commercial sex services to Tom Roe's clients, Roe began injecting Plaintiff with heroin to keep her compliant.

18.    While Plaintiff was trafficked out of several hotels and motels, Plaintiff was primarily trafficked out of the La Quinta Inn & Suites, located at 1010 Breckenridge Drive, Little Rock, Arkansas (hereinafter the "La Quinta Property"), which Tom Roe used as a home base for his trafficking venture.

19.    Plaintiff was primarily trafficked by Tom Roe out of a room at the La Quinta Property.

20. Plaintiff would be forced to stay in the same room at the La Quinta Property for approximately 30 days at a time. The hotel staff cleaned her room on a daily basis, and it would be impossible for them not to have noticed signs of trafficking, including numerous used condoms and wrappers, drug paraphernalia, and empty bottles of alcohol strewn across the room.

21. Even when Plaintiff briefly "checked-out" of the room, the hotel would always give Plaintiff the same room when she returned after she was forced to engage in commercial sex acts at another hotel or motel before returning.

22. Tom Roe made all the arrangements for the customers with whom Plaintiff was required to perform explicit commercial sex acts, including arranging the single room at the La Quinta Property.

23. He would carry many guns, including military grade guns, on his person while he was at the hotel; Plaintiff observed Tom Roe pull a gun on one of the sex trafficking customers who was rough with Plaintiff.

24. Plaintiff was threatened, abused, and manipulated by Tom Roe throughout the entire sex trafficking ordeal.

25. Tom Roe kept Plaintiff pliant by forcing her to keep using heroin, as well as withholding heroin to keep Plaintiff under his thrall, as he manipulated and forced her to continually engage in his sex trafficking venture with the hotels for over two years.

26. Tom Roe weaponized the providing of heroin and other drugs to Plaintiff and as a form of abuse and manipulation to continuously provide commercial sex acts to the men that Tom Roe thrusted upon Plaintiff.

27.    Plaintiff was controlled through the withdrawal symptoms and the need for more dosages of drugs which were delivered by Tom Roe as one method of his control over Plaintiff.

28.    Tom Roe forced Plaintiff to provide commercial sex from around August 2012 through December 2014 before she managed to escape from him.

### B. THE LA QUINTA INN & SUITES

29.    Upon information and belief, during the time Plaintiff was trafficked, the La Quinta Property was owned, maintained, or controlled by Defendant BRE/LQ Properties LLC.

30.    Defendants, along with the unnamed and unidentified employees thereof, formed a joint business venture that participated in Tom Roe's sex trafficking scheme.  The hotel employees involved in this venture included, but are not limited to, the front desk clerks, housekeeping and janitorial staff, and managers.  At all relevant times, Defendants were agents of each other and were acting within the scope of their agency or employment.

31.    At all relevant times contained herein, the Defendants had a continuous repeat business relationship with Tom Roe wherein he forced Plaintiff to remain in the same room at the hotel for intervals of 30 days near the stairwell, always returning to the same room upon Plaintiff's return to the La Quinta Inn & Suites, whereby the room stays were arranged between Tom Roe and the hotel employees to knowingly facilitate—at a minimum—a  sex trafficking scheme that they knew or should have known involved Plaintiff and other victims who were coerced into participating and thus were the victims of sex trafficking.

32.    Whether it was Plaintiff or the sex trafficking customers, everyone had to pass by the front desk for the hotel to get to the rooms, giving the hotel employees a plain view and direct knowledge of the trafficking circumstances.

33.    Tom Roe would pay weekly for the same room Plaintiff was forced to occupy, waiting for the arrangements of customers sent to Plaintiff by Tom Roe.

34.    The hotel staff was aware of Tom Roe's sex trafficking venture, as well as his victims, including Plaintiff, as several hotel staff and employees identified Plaintiff as Tom Roe's "bottom bitch."

35.    Either before the commercial sex act or after, the customer would pay Plaintiff who would then be required to give the money to Tom Roe.

36.    When Tom Roe was around, he would wait outside Plaintiff's room in the hallway while Plaintiff was completing the commercial sex transactions at Tom Roe's direction.

37.    There was no way for the front desk personnel not to have noticed that Plaintiff was likely a trafficking victim as the Plaintiff exhibited the following obvious signs of being trafficked:

   a.    Tom Roe made frequent and repeated bookings of the same room for Plaintiff, and other victims, for 30 days at a time, without much time between;

   b.    Plaintiff was obviously incapacitated, subdued, and submissive state whenever she was in public view due to being shot up with heroin;

   c.    Plaintiff was obviously reluctant to interact with hotel staff or guests;

   d.    Plaintiff was always dressed provocatively, checked in for extended stays without luggage, lacked any change of clothes, and was obviously emaciated;

e.   Plaintiff was typically visibly drugged and incapacitated when in the hotel, either entering or within the public areas, a telltale sign of sex trafficking, and it would have been obvious to anyone that she was incapable of consenting to any sexual activity;

f.   Plaintiff received frequent visits to the La Quinta Property at all hours of the day by several different, unregistered male visitors under suspicious circumstances to the rooms rented by Tom Roe;

g.   The use of the Do Not Disturb sign in the middle of the day, whenever men were visiting Plaintiff;

h.   Hotel staff were frequently precluded from entering the room while the sex trafficking was occurring—known from the Do Not Disturb sign in use—and the hotel staff must have noticed clear signs of commercial sex trafficking throughout the rooms, such as multiple used condoms and wrappers discarded in the trash, bodily fluids on the bedding and towels, and commercial sex and drug paraphernalia, when the housekeeping staff entered once a day.

38.   The La Quinta Property and Defendants benefitted from the sex trafficking venture by developing and maintaining business models that attract and foster the commercial sex market for traffickers and buyers alike; enjoying the steady stream of income that sex traffickers bring to their hotels; financially benefitting from its ongoing reputation for privacy, discretion, and the facilitation of commercial sex; and by receiving payments for use of the room.

### C. The Franchisor's role

39. Defendants, La Quinta Inn & Suites, La Quinta Holdings Inc., LQ Management LLC and Wyndham Hotels & Resorts, Inc., are referred to herein as the "Franchisor Defendants."

40. As part of the franchisor/franchisee relationship, Franchisor Defendants are each responsible for, among other things:

    a.    Creating and defining safety standards that franchisees are supposed to maintain;

    b.    Creating and defining operational standards;

    c.    Setting parameters and standards for employee wages;

    d.    Clearly communicating these standards to franchisees;

    e.    Creating training materials for franchisees and their employees;

    f.    Providing a substantial portion of the training to franchisees and their employees;

    g.    Regularly inspecting the franchisee's facilities and operations to ensure compliance with franchisor standards;

    h.    Enforcing the standards that the franchisees are required to maintain;

    i.    Terminating and replacing non-compliant franchisees; and

    j.    Exercising control over hotel bookings through online booking websites.

41. Because of this relationship, the Franchisor Defendants had the right to control and in fact did control whether their franchisees took reasonable actions to prevent sex trafficking.

42. As Defendant, Wyndham Hotels & Resorts, Inc., WYNDHAM HOTELS & RESORTS INC., owned, controls, and further franchises Defendants, La Quinta Inns & Suites, LQ Management LLC, and La Quinta Holdings, Inc., all franchisee/franchisor actions are tied to

Defendant, Wyndham Hotels & Resorts, Inc., based on the contractual franchisee/franchisor relationship.

43.     The failure of the Franchisor Defendants to identify probable sex trafficking is due solely to their turning a blind eye to it, intentionally not taking measures to outline and train franchisees on how to spot sex trafficking, and then knowingly taking no action to ensure that those measures are deployed.

44.     Upon information and belief, the Franchisor Defendants did not so much as:

a.     Read police reports or online reviews about their hotels' conditions which would have highlighted the fact that the hotels were home to rampant prostitution;

b.     Ask franchisees and their employees questions as part of their reviews to identify whether they had seen any of the signs of prostitution or sex trafficking; or

c.     Survey the hotels' guest population and activities for the same purpose.

45.     The Franchisor Defendants failed to take reasonable steps that likely would have shut down the respective hotels as havens for prostitution and therefore sex trafficking, but the Franchisor Defendants did nothing for decades.

46.     Furthermore, during the relevant timeframe, each of the Franchisor Defendants operated a computerized reservation system for their respective franchisee hotels.  These systems provided the Franchisor Defendants with the capability to detect suspicious, repeated block-room bookings, but the Franchisor Defendants failed to act or turned a blind eye to the information available at their fingertips.

47.    The Franchisor Defendants are paid royalties by their respective franchisee's revenue from room rentals.  Increased rental income at the hotels yields increased royalty payments to the Franchisor Defendants.  Thus, the Franchisor Defendants benefit financially when their franchisee hotels rent rooms that are used for sex trafficking.

48.    The New Jersey Attorney General's Office has published a list of "Red Flags" that should alert hospitality professionals that a person they come on contact with may be a victim of human trafficking.[2] The warning signs include:

    a.    An individual checks in with multiple young guests, does not have luggage, and leaves the hotel.

    b.    An individual might have numerous rooms reserved for one night. Rooms may be paid for with cash.

    c.    Within the group of guests checking in there may be one person who appears very controlling over the rest of the group and will not let the others in the group speak.

    d.    The guest(s) staying in the hotel may not have any luggage or personal items.

    e.    The guest(s) might exhibit signs of physical abuse such as: bruises, burns, scars, and/or malnourishment.[3]

---

[2] https://www.nj.gov/dca/divisions/codes/resources/bhi/NJHTTF_FS_Hospitality_ENG.pdf.
[3] Id.

49.     The Arkansas Attorney General established a Human Trafficking Task force "to address every aspect of human trafficking in the state, including the forced labor trafficking and sex trafficking…" within the State of Arkansas.[4]

50.     The United States Department of Homeland Security likewise has published signs of trafficking:

a.     Does the person have bruises in various stages of healing?

b.     Does the person show signs of having been denied food, water, sleep, or medical care?

c.     Does the person have freedom of movement?  Can the person freely leave where they live? Are there unreasonable security measures?

51.     The industry group, the American Hotel & Lodging Association (www.ahla.com), implemented a national anti-trafficking campaign called "No Room for Trafficking." As part of the campaign, the organization published a Member Resource Guide that acknowledges that training hotel managers and staff increases awareness of sex trafficking and increases the likelihood of reporting.[5]

52.     In response to the recent uptick in awareness of human trafficking and the enforcement of laws against it, the Franchisor Defendants have recently published compliance standards and efforts to combat trafficking.[6]

---

[4] https://arkansasag.gov/divisions/special-investigations-special-prosecutions/human-trafficking/.
[5] NRFT- Member Resource Guide.pdf.
[6] **Wyndham/La Quinta**: https://www.wyndhamdestinations.com/content/dam/wyndham/wynd-investor-site/pdf/WYN-modern-slavery-statement.pdf.

53.    But these efforts were too little and too late to protect Plaintiff from the depravations of sexual enslavement, from which these Franchisor Defendants all profited.

## V.    CAUSES OF ACTION

54.    All conditions precedent have been satisfied.

### COUNT ONE:
### VIOLATION OF FEDERAL ANTI-TRAFFICKING STATUTE
### (18 U.S.C. § 1581 *ET SEQ.*)
### (Against All Defendants)

55.    Plaintiff hereby repeats, reiterates, realleges, and incorporates paragraphs "1" through "54" and the Preliminary Statement as if stated herein with specificity and particularity.

56.    Defendants have each (and among them jointly and severally) violated the Victims of Trafficking and Violence Protection Act, 18 U.S.C. § 1581 *et seq.* ("TVPRA"), and therefore, are liable to Plaintiff for compensatory damages, punitive damages, attorneys' fees, and costs.

57.    The Victims of Trafficking and Violence Protection Act of 2000, Public Law 106-386, as amended, declares as illegal the trafficking in persons, including forced labor, involuntary servitude, slavery, and sex trafficking.

58.    In addition to being a victim of a "severe form[] of trafficking as it is defined under 22 U.S.C.S. §7102(11), Plaintiff was also "caused to engage in commercial sex act[s]" before she attained the age of 18 and for years thereafter. *See* 18 U.S.C. §1591(a).

59.    18 U.S.C. § 1591(a) makes it a crime to knowingly benefit, either financially or by receiving anything of value from participating in a venture that engages the trafficking of children, or the trafficking of adults by force, threat or coercion.  18 U.S.C. §1591(a).

60.    18 U.S.C. §1593A specifically makes it a violation of federal law to benefit financially or receive anything of value, from participating in a venture which has engaged in any act in violation of this chapter, with knowing or in reckless disregard of the fact that the venture has engaged in such violation.

61.    180 U.S.C. §1594 makes it a violation of federal law to attempt to or conspire with another to violate certain statutes, including 18 U.S.C. §1589, which criminalizes the obtaining of labor (or knowingly benefitting financially from participating in such a scheme when they knew or should have known of the trafficking) to obtain labor by a person by means of force, threats of force or physical restraint, serious harm or threats of serious harm, or the abuse of law or the legal processes.

62.    18 U.S.C. §1590 makes it a violation of federal law for one to "harbor" any person for labor or services in violation of this chapter.

63.    22 U.S.C. §7102(12) defines "sex trafficking" as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

64.    To "participat[e] in a venture" for purposes of the violation means "knowingly assisting, supporting, or facilitating" sex trafficking where "knowingly" means with awareness or being recklessly unaware.  18 U.S.C. §1591(e)(4).  A violation of this section includes "[w[however knowingly…benefits, financially or by receiving anything of value from participation in a venture which has engaged in an act in violation of paragraph [(a)](1)." 18 U.S.C. §1591(a)(2) *compare with* 18 U.S.C. § 1591(e)(4); *see also* 18 U.S.C. §1591(a)(1) ("Whoever knowingly…recruits, entices, harbors, transports, provides obtains, advertises, maintains, patronizes, or solicits by any means a person…".

65.     18 U.S.C. § 1594(g) also declares that any such scheme "shall be considered an organized criminal activity or other serious offense…"

66.     18 U.S.C. § 1595 provides that the Plaintiff may bring a civil action against each Defendant because each knowingly benefitted, or attempted or conspired to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter and may recover damages and reasonable attorneys' fees.

67.     18 U.S.C. §2421A(b) make it a violation of federal law for one to use an interactive computer service (or who attempts to do so) "with the intent to promote or facilitate the prostitution of another person" and acts in reckless disregard that such conduct contributed to sex trafficking.

68.     18 U.S.C. §2421A(c) authorizes a civil action separately from §1595 for damages and attorneys' fees for any person injured by reason of a violation of §2421A(b), and subsection (d) requires the imposition of mandatory restitution.

69.     Section 230 of the Communications Decency Act provides no defense to an action under §2421A(b) and (c).

70.     Each of the hotel ventures knowingly benefitted financially and knew or should have known that, even as an adult, Plaintiff was being trafficked for the purpose of having sex for money.  They knew or should have known that she was not doing so of her free will and free from coercion—and their failure to know was the result of their own recklessness.

71.     Each Defendant benefited financially in at least the following ways:

    a.     Each Defendant hotel or motel venture made money not only from Plaintiff but from the joint business venture model overall by harboring sex trafficking victims;

b. Each Defendant hotel or motel venture could rely on a constant stream of income not just from Tom Roe's trafficking of Plaintiff and their room rentals or the use of their facilities to promote sex trafficking but from the halo effect of others being a reliable source of income;

c. Each Defendant hotel or motel venture benefited financially from realizing the benefit of their hotel or motel asset being more valuable on a financial basis due to the income that was generated;

d. Each of the Franchisor Defendants (Wyndham Hotels & Resorts Inc., La Quinta Inn & Suites, LQ Management LLC, and La Quinta Holdings Inc.) benefited financially from the royalties that were paid as part of the above-noted financial benefits to the hotels themselves, including the appreciation in the value of the Franchisor's name and goodwill, and the fact that the brand was being projected to the public through signage and other advertisements.

72. There is no doubt that Tom Roe would not have been able to carry out his trafficking scheme of Plaintiff without the participation of the Defendants. Therefore, each Defendant is liable under 18 U.S.C. §1595 of the TVPRA.

73. Each Defendant hotel or motel venture was using a facility or means of interstate commerce, such as interstate wire communications via the internet and banking system, and so owned, managed, controlled, or operated an interactive computer service for all facets of its business, including performing banking, reservations, video surveillance, and communications with guests and non-guests.

74.     Each Defendant hotel or motel venture promoted or intentionally facilitated prostitution in its hotels or motels by booking rooms or permitting admission to its services and accepting payment for them year in and year out, with full knowledge that such sex trafficking or prostitution was occurring and did nothing to stop it or curb it, and if they were actually unaware that their actions contributed to the trafficking of Plaintiff, then they were reckless in their lack of awareness.

75.     Each Defendant is therefore liable under 18 U.S.C. §2421A of the TVPRA.

76.     Plaintiff is entitled to the damages she has suffered, including, but not limited to, her lost earnings and lost earning capacity due to the years she lost since she was first sex trafficked; the fact that she was not able to make any money or have the chance to develop a career of her own and have a normal life; the fact that she now has to live with the fear, stigma, shame and mental anguish from being a sex trafficking victim; and the pain and suffering of her plight, her extreme emotional distress and anguish, and her other injuries.

77.     Plaintiff is further entitled to attorneys' fees for bringing this claim, as well as punitive damages and restitution.

78.     Plaintiff pleads that this action is timely as to all pleaded occurrences because the claims did not accrue until the last wrongful act, Plaintiff's incapacity and inability to bring a claim until she became free of Tom Roe's influence and threats, which further tolls the statute of limitation, and because Defendants are estopped from raising the statute of limitations as a defense, and any statute is equitably tolled because Plaintiff was unaware of her injury.

**WHEREFORE**, Plaintiff, JANE DOE, a Sex Trafficked Individual, demands judgment from Defendants, BRE/LQ PROPERTIES LLC, LQ MANAGEMENT LLC, LA QUINTA INN & SUITES, LA QUINTA HOLDINGS INC., WYNDHAM HOTELS & RESORTS INC., RANDY ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

**COUNT TWO:**
**VIOLATION OF NEW JERSEY HUMAN TRAFFICKING STATUTES**
**(*N.J.S.A.* §2C:13-8 *ET SEQ.*)**
**(Against All Defendants)**

79.    Plaintiff hereby repeats, reiterates, realleges, and incorporates paragraphs "1" through "78" and the Preliminary Statement as if stated herein with specificity and particularity.

80.    Sex trafficking is prohibited in the State of New Jersey pursuant to N.J.S.A. §2C:13-8 *et seq.*

81.    N.J.S.A. §2C:13-8(1) provides that a person commits the crime of human trafficking if they "knowingly holds, recruits, lures, entices, harbors, transports, provides or obtains, by any means, another, to engage in sexual activity as defined by paragraph (2) of N.J.S.A. §2C:34-1[(a)]," which defines prostitution and related offenses.

82.    A person also commits the crime of human trafficking pursuant to N.J.S.A. §2C:13-8(2) if a Defendant "receives anything of value from participation as an organizer, supervisor, financier, or manager in a scheme or course of conduct which violates [N.J.S.A. §2C:13-8(1)]."

83.    Similar to the Federal TVPRA, New Jersey allows for a civil remedy for those victims of sex trafficking via N.J.S.A. §2C:13-8.1(a), which states that "[a]ny person injured, including injury due to the loss of moneys or property, real or personal, by an actor and all those

acting in concert with the actor who committed a human trafficking offense in violation of…

[N.J.S.A. §2C:13-8 or N.J.S.A. §2C:13-9] may bring a civil action in any court of competent jurisdiction against the actor and all those acting in concern with the actor."

84.   As such, Plaintiff is a victim of sex trafficking within the meaning of N.J.S.A. §2C:13-8 or N.J.S.A. §2C:13-9 and is therefore entitled to commence a civil action against the Defendants under N.J.S.A. §2C:13-8.1.

85.   Defendants' acts, omissions, and commissions, taken separately or together, outlined in all of the paragraphs of this Complaint, constitute a violation or multiple violations of N.J.S.A. §2C:13-8.1 *et seq*.

86.   Specifically, each Defendant had a statutory obligation not to benefit financially from a venture that they knew or should have known was engaged in the sex trade at their respective hotels, motels, or clubs.

87.   At all relevant times, Defendants breached this duty by knowingly participating in and facilitating the harboring and provision of Plaintiff for purposes of commercial sex transactions induced by force, fraud, or coercion by the Defendants' acts, omissions, or commissions.

88.   Defendants have financially benefited as a result of these acts, omissions, or commissions by keeping operating costs low and maintaining the loyalty of the segment of its customer base that seeks to participate in the sex trafficking trade.

89.   Defendants have directly benefited from the trafficking of Plaintiff each time they received payment for any use at the hotels, motels, or clubs where Plaintiff was forced to prostitute herself or was forced into the sex trade by Tom Roe or his associates.

90. The actions, omissions, or commissions alleged in this Complaint were the cause, either actual or proximate, for Plaintiff's physical injuries, psychological injuries, and other damages.

91. Plaintiff pleads that this action is timely as to all pleaded occurrences due to Plaintiff's incapacity and inability to bring a claim until she became free of Tome Roe's influence and threats due to the continuing tort doctrine, and because Defendants are estopped from raising the statute of limitations as a defense. Thus, Plaintiff's causes of action are timely under the doctrines of continuing tort, disability, equitable tolling, estoppel, and all other applicable state and federal laws, statutes, and regulations.

92. As a result of Defendants' knowingly, grossly, carelessly, and recklessly negligent conduct, Plaintiff has suffered substantial physical and psychological injuries as a result of being sexually trafficked, sexually exploited, or otherwise injured, thereby resulting in compensable damages, equitable relief, attorneys' fees, actual costs, and all available remedies owed to Plaintiff in violation of N.J.S.A. §2C:13-8 *et seq*.

**WHEREFORE**, Plaintiff, JANE DOE, a Sex Trafficked Individual, demands judgment from Defendants, BRE/LQ PROPERTIES LLC, LQ MANAGEMENT LLC, LA QUINTA INN & SUITES, LA QUINTA HOLDINGS INC., WYNDHAM HOTELS & RESORTS INC., RANDY ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

**COUNT THREE:**
**CIVIL CAUSE OF ACTION FOR VICTIMS**
**OF HUMAN TRAFFICKING (*ARK. CODE ANN.* §16-118-109)**
**(Against All Defendants)**

93. Plaintiff hereby repeats, reiterates, realleges, and incorporates paragraphs "1" through "92" and the Preliminary Statement as if stated herein with specificity and particularity.

94. Sex trafficking is prohibited in the State of Arkansas pursuant to *Ark. Code. Ann.* §5-18-101 *et seq.*

95. *Ark. Code Ann.* §5-18-103(a) provides that a person commits the crime of human trafficking if he or she "knowingly [] recruits, harbors, transports, obtains, entices, solicits, isolates, provides, or maintains a person when he or she knows or reasonably should know that the person will be subjected to involuntary servitude…" *Ark. Code Ann.* §5-18-103(a)(1).

96. A person also commits the crime of human trafficking pursuant to *Ark. Code Ann.* §5-18-103(a)(2) if a Defendant "[b]enefits financially or benefits by receiving anything of value from participation in a venture that he or she knows or reasonably should know is engaged in conduct prohibited under subdivision (a)(1)… [or] [b]enefits financially or benefits by receiving anything of value from participating in an act described under subdivision (a)(6) of this section." *Ark. Code Ann.* §5-18-103(a)(2); *Ark. Code Ann.* §5-18-103(a)(7).

97. Similar to the Federal TVPRA, Arkansas allows for a civil remedy for those victims of sex trafficking via *Ark. Code. Ann.* §16-118-109, which provides that "[a]n individual who is a victim of human trafficking may bring a civil action in any appropriate state court against a person or entity who: [k]new or should have known that the individual was or would be subjected to any form of trafficking of persons pursuant to [*Ark. Code Ann.*] §5-18-103; and [c]aused, was responsible for, or benefitted financially or received anything of value from the human trafficking incident." *Ark. Code Ann.* §16-118-109(b).

98.     As such, Plaintiff is a victim of sex trafficking within the meaning of *Ark. Code Ann.* §5-18-102 *et seq.*, and is therefore entitled to commence a civil action against the Defendants under *Ark. Code Ann.* §16-118-109.

99.     Defendants' acts, omissions, and commissions, taken separately or together, outlined in all of the paragraphs of this Complaint, constitute a violation or multiple violations of *Ark. Code Ann.* §5-18-102 *et seq.*

100.    Specifically, each Defendant had a statutory obligation not to benefit financially from a venture that they knew or should have known was engaged in the sex trade at their respective hotels or motels.

101.    At all relevant times, Defendants breached this duty by knowingly participating and facilitating, the harboring, and provision of Plaintiff for purposes of extortion, involuntary servitude, sex act, or other sexually explicit actions as defined within *Ark. Code Ann.* §5-18-102, induced by force, fraud, harm, or coercion by the Defendants' acts, omissions, or commissions.

102.    Defendants have financially benefited as a result of these acts, omissions, or commissions, by keeping operating costs low and maintaining the loyalty of the segment of its customer base that seeks to participate in the sex trafficking trade.

103.    Defendants have directly benefited from the trafficking of Plaintiff each time they received payment for any use at the hotels or motels where Plaintiff was forced to prostitute herself or engage in a sex act or forced into the sex trade by Tom Roe.

104.    The actions, omissions, or commissions alleged in this Complaint were the cause, either actual or proximate, for Plaintiff's physical injuries, psychological injuries, and other damages.

105.    Plaintiff pleads that this action is timely as to all pleaded occurrences due to Plaintiff's incapacity and inability to bring a claim until she became free of Tim Roe's influence and threats, due to the continuing tort doctrine, and because Defendants are estopped from raising the statute of limitations as a defense.  Thus, Plaintiff's causes of action are timely under the doctrines of continuing tort, disability, equitable tolling, estoppel, and all other applicable state and federal laws, statutes, and regulations.

106.    As a result of Defendants' knowingly, grossly, carelessly, and recklessly negligent conduct, Plaintiff has suffered substantial physical and psychological injuries as a result of being sexually trafficked, sexually exploited, or otherwise injured, thereby resulting in compensable damages, equitable relief, attorneys' fees, actual costs, and all available remedies owed to Plaintiff in violation of *Ark. Code Ann.* §16-118-109.

**WHEREFORE**, Plaintiff, JANE DOE, a Sex Trafficked Individual, demands judgment from Defendants, BRE/LQ PROPERTIES LLC, LQ MANAGEMENT LLC, LA QUINTA INN & SUITES, LA QUINTA HOLDINGS INC., WYNDHAM HOTELS & RESORTS INC., RANDY ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

## COUNT FOUR:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Against All Defendants)**

107.    Plaintiff hereby repeats, reiterates, realleges, and incorporates paragraphs "1" through "106" and the Preliminary Statement as if stated herein with specificity and particularity.

108.   At all times relevant, each of the Defendant hotel or motel ventures acted through their agents and employees, and the Franchisor Defendants (Wyndham Hotels & Resorts Inc., LQ Management LLC, La Quinta Inn & Suites, and La Quinta Holdings Inc.) were the agents of their respective Franchisee hotels or motels (or vice-versa), and their acts and omissions were all in the scope of their employment or agency.

109.   Because Plaintiff was a hotel or motel guest at each hotel or motel venture's respective property, each Defendant had a duty of care to take reasonable precautions not to harbor or provide a safe haven for the sex trade and thus sex trafficking.  Without limiting the generality of the foregoing, Defendants had a duty to:

    a.   Have knowledge of the signs of sex trafficking;

    b.   Have awareness of the degree of prostitution taking place in their hotels or motels;

    c.   Recognize when people of any gender could be victims of sex trafficking;

    d.   Provide adequate incentives to hotel or motel employees not to acquiesce to or, worse, facilitate the sex trade in their hotels or motels;

    e.   Provide adequate training to hotel or motel employees to avoid facilitating sex trade businesses and prostitution in their hotels or motels in states where prostitution is illegal;

    f.   Properly train employees for dealing with suspected prostitution or sex trafficking, including alerting law enforcement, in light of the warning signs provided by government authorities in common sense;

g.     Properly monitor and record their hotels' or motels' public areas via cameras to ensure the safety of their guests; and

h.     Recognize when a guest is under the influence of substances or otherwise incapacitated to the point of not being in control of themselves and, therefore unable to escape or consent to any sexual activity.

110.    Each Defendant knew or should have known of the risks to Plaintiff.

111.    At all times herein mentioned, Defendants and each of them knew of the regulations and laws cited herein and knew that the wellbeing and health of their guests were at risk whenever they failed to meet such duties.

112.    Each Defendant hotel or motel venture knew or should have known that their routine failure to adhere to their duties created an unacceptable risk of severe injury and emotional distress to Plaintiff and others like her.

113.    Each Defendants' actions (whether directly or through their agents or employees) were done with knowledge or reckless disregard of what was occurring to Plaintiff, and Defendants' employees' active participation in allowing Plaintiff to be used in the sex trade and sex trafficking is outrageous conduct. Defendants' conduct alleged herein demonstrates reckless disregard for Plaintiff, her health and safety, and her plight.  Thus, Defendants' despicable conduct subjected Plaintiff to cruel, wicked, and unjust hardship in conscious disregard of Plaintiff's rights.

114.    As a further result of Defendants' conduct, Plaintiff was forced to endure great pain, mental anguish, shock, humiliation, feelings of helplessness, and desperation for years, in addition to and on top of the physical abuse.

115.    Each Defendant acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was being subjected to Tom Roe's abusive and manipulative conduct.  Each Defendant was well aware of the propensity for abuse and violence taking place in their hotels or motels.

116.    Plaintiff has suffered for more than two years' worth of severe emotional distress, including humiliation, mental and emotional suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, and shame, and she continues to live with it and will likely have to live with it for the rest of her life. She lacks the means and insurance to seek proper and continuous treatment.  Each Defendant's acts and omissions were a substantial factor in causing Plaintiff's severe emotional trauma and distress.

117.    Each Defendant's acts or omissions were the result of oppression or malice against Plaintiff because they were recklessly indifferent to Plaintiff's wellbeing.

118.    Plaintiff pleads that this action is timely as to all pleaded occurrences due to Plaintiff's incapacity and inability to bring a claim until she became free of Tom Roe's influence and threats, due to the continuing tort doctrine, and because Defendants are estopped from raising the statute of limitations as a defense. Thus, Plaintiff's causes of action are timely under the doctrines of continuing tort, disability, equitable tolling, estoppel, and all other applicable state and federal laws, statutes, and regulations.

119.    Plaintiff seeks all compensable damages, punitive damages, equitable relief, disgorgement, attorneys' fees, and actual costs of bringing this lawsuit.

**WHEREFORE**, Plaintiff, JANE DOE, a Sex Trafficked Individual, demands judgment from Defendants, BRE/LQ PROPERTIES LLC, LQ MANAGEMENT LLC, LA QUINTA INN & SUITES, LA QUINTA HOLDINGS INC., WYNDHAM HOTELS & RESORTS INC., RANDY

ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

**COUNT FIVE:**
**NEGLIGENCE**
**(Against All Defendants)**

120.   Plaintiff hereby repeats, reiterates, realleges, and incorporates paragraphs "1" through "119" and the Preliminary Statement as if stated herein with specificity and particularity.

121.   Each Defendant, including the Franchisor Defendants (Wyndham Hotels & Resorts Inc., LQ Management, LLC, La Quinta Inn & Suites, and La Quinta Holdings Inc.), owed Plaintiff a duty of care to take reasonable measures to ensure that she was not being subjected to sex trafficking and criminal abuse on their premises.

122.   Each Defendant also owed a duty to Plaintiff to use reasonable care to ensure the safety, care, wellbeing, and health of Plaintiff while she was on the premises of their hotels or motels.

123.   Further, each Defendant's duties encompassed the hiring, screening, appointment, retention, training, or supervision of their employees that would have otherwise provided a safe environment for Plaintiff at the hotels or motels owned, operated, controlled, managed, or maintained by Defendants.

124.   Each Defendant knew or should have known from the open and obvious signs that Plaintiff was a victim of sex trafficking or a victim of the Defendants' joint business venture with Tom Roe.

125. Defendants breached their duty of care owed to Plaintiff and were negligent for failing to protect Plaintiff from the joint business venture they engaged in with Tom Roe where Defendants failed to prevent Plaintiff's ordeal from continuing.

126. Defendants knew or should have known, based on the obvious and visible signs, that the Plaintiff, was being abused, assaulted, controlled, drugged, forced, and otherwise exploited—sexually or otherwise—while at their hotels or motels.

127. Despite their knowledge regarding the sexual exploitation of Plaintiff, Defendants took no remedial action, did not conduct a good faith investigation, or did not take any other actions whatsoever to ensure the health and safety of Plaintiff.

128. Defendants also failed to act regarding the hiring, screening, appointment, retention, training, or supervision of Defendants' employees who knowingly or recklessly permitted Plaintiff to be continually exploited, sexually or otherwise, on the Defendants' premises within the scope and course of employment.

129. At all times relevant to this Complaint, Defendants had grossly inadequate policies and procedures to protect sex trafficking victims, including Plaintiff.

130. As a direct and proximate cause of Defendants' negligence, whether gross, careless, or reckless, Plaintiff was sex trafficked, sexually exploited, abused, assaulted, and continually victimized at the Defendants' hotels or motels.

131. The actions, omissions, commissions, or lack thereof of each Defendant, whether taken separately or together, constitute negligence and said negligence as outlined in this Complaint is the cause of Plaintiff's injuries and damages.

132.   Plaintiff has been injured and damaged under common law negligence, as well as all applicable state or federal laws, statutes, or regulations for negligence, due to the continual ordeal Plaintiff suffered.

133.   Plaintiff's negligence claims are timely under the doctrines of continuing tort tolling, disability, equitable tolling, estoppel, and all applicable state or federal laws, statutes, or regulations.

134.   As a result of Defendants' knowingly, grossly, carelessly, and recklessly negligent conduct, Plaintiff has suffered substantial physical and psychological injuries as a result of being sexually trafficked, sexually exploited, or otherwise injured, thereby resulting in compensable damages, equitable relief, attorneys' fees, actual costs, and all available remedies owed to Plaintiff.

**WHEREFORE**, Plaintiff, JANE DOE, a Sex Trafficked Individual, demands judgment from Defendants, BRE/LQ PROPERTIES LLC, LQ MANAGEMENT LLC, LA QUINTA INN & SUITES, LA QUINTA HOLDINGS INC., WYNDHAM HOTELS & RESORTS INC., RANDY ROES 1-100, and ABC CORPORATIONS 1-100,  for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

**COUNT SIX:**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Against All Defendants)**

135.   Plaintiff hereby repeats, reiterates, realleges, and incorporates paragraphs "1" through "134" and the Preliminary Statement as if stated herein with specificity and particularity.

136. Each Defendant, including the Franchisor Defendants (Wyndham Hotels & Resorts, Inc., LQ Management, LLC, La Quinta Inn & Suites, and La Quinta Holdings Inc.), owed Plaintiff a duty of care to take reasonable measures to ensure that she was not being subjected to sex trafficking and criminal abuse on their premises.

137. Each Defendant also owed a duty to Plaintiff to use reasonable care to ensure the safety, care, wellbeing, and health of Plaintiff while she was on the premises of their hotels or motels.

138. Each Defendant breached its duty to the Plaintiff.

139. At all times relevant to this Complaint, each of the Defendant hotel or motel business ventures acted through their agents, employees, or other authorized individuals, and the Franchisor Defendants (Wyndham Hotels & Resorts, Inc., LQ Management LLC, La Quinta Inn & Suites, and La Quinta Holdings Inc.) were agents of their respective Franchisee hotels or motels (or vice-versa), and their acts and omissions were all in the scope of their employment or agency.

140. Since the Plaintiff was a guest or customer of the hotels or motels at each Defendant's hotel or motel venture's respective premises, each Defendant had a duty of care to take reasonable precautions not to harbor or provide a safe haven for sex trafficking or forced prostitution.

141. Without limiting the generality of the foregoing, each Defendant had a duty to:

    a.    Have knowledge of the signs of sex trafficking;

    b.    Have an awareness of the degree of the sex trade or forced prostitution businesses taking place in their hotels or motels;

    c.    Recognize that people of any gender could be victims of sex trafficking or forced prostitution;

d.   Provide adequate incentives to hotel or motel employees or agents not to acquiesce or, worse, to facilitate the sex trade in their hotels or motels;

e.   Provide adequate training or supervision to hotel or motel employees or agents to avoid facilitating forced prostitution in their hotels or motels in their states where prostitution is illegal;

f.   Properly train or supervise employees or agents of the hotels or motels for dealing with suspected prostitution or sex trafficking, including alerting law enforcement, in light of their warning signs provided by government authorities and common sense;

g.   Properly monitor and record their hotels' or motels' public areas via cameras to ensure the safety or their guests and customers; and

h.   Recognize when a guest or customer is under the influence of substances or otherwise incapacitated to the point of not being in control of themselves and, therefore, unable to escape or consent to any sexual activity.

142.   Each Defendant knew or should have known of the risks to Plaintiff.  At all times herein mentioned, Defendants and each of them knew of the regulations and laws cited herein and that the lives and health of their guests or customers were at risk whenever the Defendants failed to meet such duties.

143.   Each Defendant hotel or motel venture knew or should have known that their routine failure to adhere to their duties created an unacceptable risk of severe injury, psychological distress, and mental anguish to the Plaintiff and others like her.

144.    Each Defendant's actions or omissions (whether directly or through their agents or employees) were done with negligent disregard of what was occurring to Plaintiff, and Defendants' employees' or agents' outrageous conduct allowed Plaintiff to be sex trafficked or forced to prostitute herself.

145.    Defendants' conduct alleged herein demonstrates negligent disregard for Plaintiff, her health and safety, and her plight.  Thus, Defendants' despicable conduct subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights.

146.    Each Defendant acted with negligent disregard of the probability that Plaintiff would suffer emotional district or psychological harm, knowing that Plaintiff was being subjected to Tom Roe's abusive conduct.  Each Defendant was well aware of the propensity for abuse and violence taking place in their hotels or motels.  As a result of the Defendants' conduct, Plaintiff was forced to endure great pain, mental anguish, shock, humiliation, feelings of helplessness and desperation for *years*.

147.    Plaintiff has suffered more than two-years' worth of severe emotional distress, including humiliation, mental and emotional suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, and shame, and she continues to live with it and will likely have to live with it for the rest of her life.  She lacks the means and insurance to seek proper treatment and care. Each Defendant's acts and omissions were a substantial factor in causing Plaintiff's severe emotional distress and psychological harm.

148.    As a direct and proximate cause of Defendants' negligence, whether gross, careless, or reckless, Plaintiff sustained severe and serious harm, including, but not limited to, severe emotional distress and psychological harm, all to her damage in a sum within the jurisdiction of this Court and to be shown according to proofs.

149. The actions, omissions, commissions, or lack thereof of each Defendant, whether taken separately or together, constitute negligence, and said negligence as outlined in this Complaint is the cause of Plaintiff's emotional distress and psychological harm, or similar injuries.

150. Due to their negligence, each Defendant is therefore liable to Plaintiff for the damages she suffered, including, but not limited to, her lost earnings and lost earning capacity, as well as the physical injuries, and the fact that she never had the chance to develop a career of her own or have a normal life.

151. The fact that Plaintiff now has to live with the fear, stigma, shame, and mental anguish of being a sex trafficking victim, and her pain, suffering and physical scars of her plight, and her extreme emotional distress and physical injuries, are due to the acts, omissions or lack thereof of the Defendants.

152. All such damages are the foreseeable and proximate result of Defendants' acts or omissions.

153. Each Defendant's acts and omissions proximately caused Plaintiff to suffer and continue to suffer anguish, fear, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame, such that an ordinary, reasonable person would be unable to cope with it.

154. Plaintiff continues to have trouble sustaining herself financially.

155. Each of Defendants' negligent acts or omissions were a substantial factor in causing Plaintiff's severe emotional distress or psychological harm.

156. Plaintiff has been injured and damaged under common law negligence, as well as all applicable state or federal laws, statutes, or regulations for negligence, due to the continual ordeal Plaintiff suffered.

157. Plaintiff's claims are timely under the doctrines of continuing tort tolling, disability, equitable tolling, estoppel, and all applicable state or federal laws, statutes, or regulations.

158. Defendants' knowingly, grossly, carelessly, and recklessly negligent conduct caused Plaintiff to suffer substantial physical and psychological injuries as a result of being sexually trafficked, sexually exploited, or otherwise injured, thereby resulting in compensable damages, equitable relief, attorneys' fees, actual costs, and all available remedies owed to Plaintiff.

**WHEREFORE**, Plaintiff, JANE DOE, a Sex Trafficked Individual, demands judgment from Defendants, BRE/LQ PROPERTIES LLC, LQ MANAGEMENT LLC, LA QUINTA INN & SUITES, LA QUINTA HOLDINGS INC., WYNDHAM HOTELS & RESORTS INC., RANDY ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

**COUNT SEVEN:**
**VICARIOUS LIABILITY**
**(Against All Defendants)**

159. Plaintiff hereby repeats, reiterates, realleges, and incorporates paragraphs "1" through "158" and the Preliminary Statement as if stated herein with specificity and particularity.

160. Defendants or the Franchisor Defendants are further liable for the acts and omissions of their franchisees or contractual agents due to the Owners/Franchisor Defendants' negligent failure to (i) identify the proper operators to serve as franchisees or contractual agents; (ii) train or supervisor their franchisees or contractual agents; (iii) create and implement anti-

trafficking measures; and (iv) train and monitor their franchisees' or contractual agents' compliance with said measures.

161.   To the extent that any Defendant is found not to be directly liable to Plaintiff, they are liable pursuant to all counts of this Complaint under one or more of the foregoing referenced doctrines.

162.   Each Defendant found not to be directly liable to the Plaintiff is liable under the doctrine of aiding and abetting or a similar applicable state or federal doctrine, law, statute, or regulation.

        a.   Each Defendant gave substantial assistance, comfort or encouragement to Tom Roe to perpetrate his sex trafficking scheme and violence against the Plaintiff;

        b.   Each Defendant, directly or through one or more of its employees or agents, actively took part in Plaintiff's trafficking, or furthered it by cooperating with Tom Roe, or ratified and adopted their actions so that the joint ventures could make money, avoid detection, and continue as a business; and

        c.   Each Defendant's conduct was a substantial factor in causing harm to Plaintiff and perpetuating her trafficking because without the hotels or motels, permitting the sex trafficking or forced prostitution would not have occurred.

163.   Each Defendant found not to be directly liable to the Plaintiff is liable under the doctrine of *respondeat superior* or a similar applicable state or federal doctrine, law, statute, or regulation.

a.   Each of the named Defendants herein acting through their agents or employees are liable for the acts and omissions of their agents or employees giving rise to liability;

b.   For each of the respective Defendant hotel or motel ventures described herein, the owners, management companies, affiliates, employees, or agents, and, as applicable, franchisors were the agents of each other, if not the employees of each Defendant, and at all times were acting in the scope of the agency or employment;

c.   For the hotel or motel employees, their tortious conduct is chargeable to the hotel, or motel owners, management companies, or affiliates because their acts or omissions were in the scope of their employment or in the scope of agency in a way that was inherent in their employment duties and was conduct that was a natural outgrowth of their employment or agency duties under the risk-of-the-enterprise doctrine; and

d.   Each Defendant or the Franchisor Defendants (Wyndham Hotels & Resorts, Inc., LQ Management, LLC, La Quinta Inn & Suites, and La Quinta Holdings Inc.) are vicariously liable for the acts or omissions of their own employees, agents, or affiliates.

164.   Each Defendant found not to be directly liable to the Plaintiff is liable under the doctrine of a joint enterprise or a similar applicable state or federal doctrine, law, statute, or regulation.

a. Each Defendant or the Franchisor Defendants (Wyndham Hotels & Resorts, Inc., LQ Management LLC, La Quinta Inn & Suites, and La Quinta Holdings Inc.) are vicariously liable for the acts or omissions of their franchisees or contractual agents and vice versa under the theory of joint enterprise liability;

b. Each Defendant or Franchisor Defendants (in their capacity as such) formed a joint venture with their respective hotel, motel, or club ventures because (i) each intended to combine their relative property, skills, knowledge, and operations of the hotel or motel for the purposes of carrying out a single business (namely, the franchised hotel business at issue); (ii) each of the Defendants or Franchisor Defendants and each of their respective franchisees or contractual agents had a relevant ownership or management interest in the franchised hotel or motel business; (iii) each of the Defendants or Franchisor Defendants and their franchisee or contractual agents had a right to control the business—per their appliable agreements— the hotel or motel owners/franchisees controlled the day-to-day operations while the franchisor/owner controlled the macro aspects of the business; and (iv) upon information and belief, they shared the profits and each shared losses in that they bore, at a minimum some or all of their respective unrecouped costs if the business never made a profit; and

c. Each joint enterprise is alleged to have been made actually and by apparent authority to the Plaintiff.

165. Each Defendant found not to be directly liable to the Plaintiff is liable under the doctrine of concerted action or a similar applicable state or federal doctrine, law, statute, or regulation.

a. Each Defendant or the Franchisor Defendants (Wyndham Hotels & Resorts, Inc., LQ Management LLC, La Quinta Inn & Suites, and La Quinta Holdings Inc.) are vicariously liable for the acts or omissions of their franchisees or contractual agents and those franchisees' or contractual agents' employees and agents, and vice versa under the theory of concerted action;

b. Each Defendant or Franchisor Defendant within each joint venture worked towards a common goal of building and maintaining the hotel business at each respective hotel or motel;

c. Each Defendant knew or should have known that they were engaging in and materially assisting a sex trade operation in their hotels or motels, which they knew or should have known could violate a duty of care owed to the Plaintiff;

d. Each of the Defendants or Franchisor Defendants (in their capacity as such) intended to combine their relative property, skills, knowledge, and operations of the hotel or motel for the purposes of carrying out a single business (namely, the franchised businesses at issue);

e. Each of the Defendants or Franchisor Defendants and each of their respective franchisees had a relevant ownership interest in the franchised hotel or motel business;

f.    Each of the Defendants or Franchisor Defendants and each of their respective franchisees had a right to control the business (per all appliable contractual agreements)—the hotel or motel owners/franchisees controlled the day-to-day operations while the Defendants or Franchisor Defendants controlled the macro aspects of the business—and had the right to take control of the franchised hotel, motel, or club business;

g.    Upon information and belief, each Defendant shared the profits and each shared losses in that they bore, at a minimum, some or all of their respective unrecouped costs if the business never made a profit.

166.    As to each Defendant who contends they did not personally commit any of the acts that would give rise to liability, it is pleaded that said Defendant is liable through one or more of the above-referenced doctrines or legal theories.

167.    Under the above referenced doctrines or legal theories, each Defendant is liable for Plaintiff's harm, whether physical, psychological, or otherwise.

168.    Each Defendant's acts or omissions under one or more of the above doctrines or legal theories were a substantial factor in causing harm to Plaintiff and perpetuating Plaintiff's sex trafficking or exploitation.

169.    Plaintiff's claims are timely under the doctrines of continuing tort tolling, disability, equitable tolling, estoppel, and all applicable state or federal laws, statutes, or regulations.

170.    Defendants' knowingly, grossly, carelessly, and recklessly negligent conduct caused Plaintiff to suffer substantial physical and psychological injuries as a result of being sexually trafficked, sexually exploited, or otherwise injured, thereby resulting in compensable damages, equitable relief, attorneys' fees, actual costs, and all available remedies owed to Plaintiff.

WHEREFORE, Plaintiff, JANE DOE, a Sex Trafficked Individual, demands judgment from Defendants, BRE/LQ PROPERTIES LLC, LQ MANAGEMENT LLC, LA QUINTA INN & SUITES, LA QUINTA HOLDINGS INC., WYNDHAM HOTELS & RESORTS INC., RANDY ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

## COUNT NINE:
### PUNITIVE DAMAGES
### (Against All Defendants)

171.    Plaintiff hereby repeats, reiterates, realleges, and incorporates paragraphs "1" through "170" and the Preliminary Statement as if stated herein with specificity and particularity.

172.    Due to the acts or omissions of the Defendants, either separately or together, Plaintiff is entitled to an award for punitive damages to deter  Defendants from similar wrongful conduct in the future.

173.    Defendants' conduct in allowing, either knowingly or recklessly, Plaintiff to suffer both physically and emotionally from Tom Roe's continuous sexual exploitation at their premises warrants a strong deterrent and punishment.

174.    Each Defendant's conduct, either separately or together, was so egregious and outrageous that further discouragement is required because the harm suffered by Plaintiff was a deliberate act or omission that was foreseeable due to the gross, reckless, and careless actions of the Defendants.

175.    Plaintiff's claims for punitive damages are timely under the doctrines of continuing tort tolling, disability, equitable tolling, estoppel, and all applicable state or federal laws, statutes, or regulations.

176.    Moreover, each Defendant's knowingly or recklessly malicious conduct caused Plaintiff to suffer substantial physical and psychological injuries as a result of being sexually trafficked, sexually exploited, or otherwise injured, thereby resulting in punitive damages.

**WHEREFORE**, Plaintiff, JANE DOE, a Sex Trafficked Individual, demands judgment from Defendants, BRE/LQ PROPERTIES LLC, LQ MANAGEMENT LLC, LA QUINTA INN & SUITES, LA QUINTA HOLDINGS INC., WYNDHAM HOTELS & RESORTS INC., RANDY ROES 1-100, and ABC CORPORATIONS 1-100, for compensatory damages, punitive damages, applicable statutory damages, incidental damages, consequential damages, ,and costs, including reasonable attorneys' fees, and applicable interest, and such other relief as this Court may deem just and equitable.

## VI.    DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. Rule 38(b), a Demand for a Jury Trial is made as to all triable issues.

## VII.    LOCAL RULE 11.2 CERTIFICATION

The undersigned certifies that, to his knowledge, the matter in controversy is not the subject

of any other action pending in this Court or another court.

Dated:  December 23, 2024
   Newark, New Jersey

        **SBAITI & COMPANY NJ LLC**
        Attorneys for Plaintiff, JANE DOE, a Sex
        Trafficked Individual

      By: _____
        MATTHEW B. SICHERI
        100 Mulberry Street
        3 Gateway Center, Suite 1102
        Newark, New Jersey 07102
        P: (973) 954-2000
        F: (973) 954-9710
        E: matthew.sicheri@sbaitilaw.com

        Kevin N. Colquitt, Esq.
        Texas State Bar No.: 24072047
        *Pro hac vice motion forthcoming*
        SBAITI & COMPANY PLLC
        Dallas Arts Tower
        2200 Ross Avenue, Suite 4900W
        Dallas, Texas 75201
        P: (214) 432-2899
        E: knc@sbaitilaw.com